**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Case No.: 23-CR-288 (BAH)** |
| | : | |
| **v.** | : | |
| | : | |
| **JOSEPH PASTUCCI,** | : | |
| | : | |
| **Defendant.** | : | |

## STATEMENT OF OFFENSE

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Joseph Pastucci with the concurrence of his attorney, hereby submit the elements for each count in the Criminal Information and statements of facts for stipulated trial in this action.

### Elements of the Offenses

A. *Count One: Obstruction of an Official Proceeding and Aiding and Abetting*

The essential elements of the offense of obstruction of an official proceeding, in violation of 18 U.S.C. § 1512, each of which the government must prove beyond a reasonable doubt, are as follows:

1. The defendants attempted to or did obstruct or impede an official proceeding;

2. The defendants intended to obstruct or impede the official proceedings;

3. The defendants acted knowingly, with awareness that the natural and probable effect of their conduct would be to obstruct or impede the official proceedings; and;

4. The defendants acted corruptly.

The essential elements of the offense of aiding and abetting others to commit the offense of obstruction of an official proceeding, in violation of 18 U.S.C. § 1512, each of which the government must prove beyond a reasonable doubt, are as follows:

1. That others committed obstruction of an official proceeding by committing each of the elements of the offense charged;

2. That the defendants knew that obstruction of an official proceeding was going to be committed or was being committed by others;

3. That the defendants performed an act or acts in furtherance of the offense;

4. That the defendants knowingly performed an act or acts for the purposes of aiding, assisting, soliciting, facilitating, or encouraging others in committing the offense of obstruction of an official proceedings; and

5. That the defendants did that act or acts with the intent that others commit the offense of obstruction of an official proceeding.

B. *Count Two: Civil Disorder*

The essential elements of the offense of civil disorder, in violation of 18 U.S.C. §231(a)(3), each of which the government must prove beyond a reasonable doubt, are as follows:

1. The defendants knowingly committed an act or attempted to commit an act with the intended purpose of obstructing, impeding, or interfering with one or more law enforcement officers, that is an officer of the United States Capitol Police;

2. At the time of the defendants' actual or attempted act, the officer was engaged in the lawful performance of his official duties incident to and during a civil disorder;[1]

---

[1] The term "civil disorder" means any public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of or results in damage or injury to the property or person of any other individual.

3. The civil disorder, in any way or degree, obstructed, delayed, or adversely affected either commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function.[2]

C. *Count Three: Assaulting, Resisting, or Impeding Certain Officers*

The essential elements of the offense of assaulting, resisting, or impeding certain officers, in violation of 18 U.S.C. §111(a)(1), each of which the government must prove beyond a reasonable doubt are as follows:

1. The defendants assaulted, resisted, opposed, impeded, intimidated, or interfered with any officer or employee of the United States or of any agency in any branch of the United States Government, that being an officer of the United States Capitol Police;

2. The defendants did so with some use of force that involved physical contact or the intent to commit another felony;

3. That the defendants did such acts voluntarily and intentionally; and

4. The defendants did so while the officer or employee was engaged in or on account of the performance of official duties.

5. The defendants made physical contact with the officer of the United States Capitol Police or acted with the intent to commit another felony.

---

[2] A "federally protected function" means any function, operation, or action carried out, under the laws of the United States, by any department, agency, or instrumentality of the United States or by an officer or employee thereof.

D. *Count Four: Entering and Remaining in a Restricted Building or Grounds*

The essential elements of the offense of entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1), each of which the government must prove beyond a reasonable doubt are as follows:

1. The defendants entered or remained in a restricted building or grounds without lawful authority do so; and,

2. That the defendants did so knowingly.

 E. *Count Five: Disorderly and Disruptive Conduct in a Restricted Building or Ground*

The essential elements of the offense of disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. §1752(a)(2), each of which the government must prove beyond a reasonable doubt, are as follows:

1. That the defendants engaged in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds.

2. That such conducted occurred when, or so that, such conduct, in fact, impeded or disrupted the orderly conduct of Government business or official functions; and,

3. That the defendants did so knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions.

F. *Count Six: Engaging in Physical Violence in a Restricted Building or Grounds*

The essential elements of the offense of engaging in physical violence in a restricted building or grounds, in violation of 18 U.S.C. §1752(a)(4), each of which the government must prove beyond a reasonable doubt, are as follows:

1. The defendants engaged in an act of physical violence against a person in, or in proximity to, a restricted building or grounds.

2. The defendants did so knowingly.

G. *Count Seven: Entering and Remaining on the Floor of Congress*

The essential elements of the offense of entering and remaining on a floor of Congress, in violation of 40 U.S.C. § 5104(e)(2)(A), each of which the government must prove beyond a reasonable doubt, are as follows:

1. The defendants entered or remained on the floor of either House of Congress without lawful authority to do so.

2. The defendants acted willfully and knowingly.

H. *Count Eight: Entering and Remaining in Certain Rooms in the Capitol Building*

The essential elements of the offense of entering and remaining in certain rooms of the Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(C), each of which the government must prove beyond a reasonable doubt, are as follows:

1. The defendants entered or remained in any room in any of the Capitol Buildings set aside or designated for the use of either House of Congress or a Member, committee, or employee of Congress, or either House of Congress without lawful authority to do so.

2. The defendants did so with the intent to disrupt the orderly conduct of official business.

3. The defendants acted willfully and knowingly.

I. *Count Nine: Disorderly Conduct in a Capitol Building*

The essential elements of the offense of disorderly conduct in the Capitol buildings or grounds thereof, in violation of 40 U.S.C. § 5104(e)(2)(D), each of which the government must prove beyond a reasonable doubt, are as follows:

1.  The defendants engaged in disorderly or disruptive conduct in any of the United States Capitol Buildings;

2.  The defendants did so with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress; and,

3.  The defendants acted willfully and knowingly.

J. *Count Ten: Act of Physical Violence in the Capitol Grounds or Buildings*

The essential elements of the offense of engaging in an act of physical violence within the Capitol buildings or grounds thereof, in violation of 40 U.S.C. § 5104(e)(2)(F), each of which the government must prove beyond a reasonable doubt, are as follows:

1.  The defendants engaged in an act of physical violence within the Capitol Buildings or Grounds.

2.  The defendants acted willfully and knowingly.

K. *Count Eleven: Parading, Demonstrating, or Picketing in a Capitol Building.*

The essential elements of the offense of parading, demonstrating, or picketing in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G), each of which the government must prove beyond a reasonable doubt, are as follows:

1.  The defendants paraded, demonstrated, or picketed in any of the United States Capitol Buildings; and,

2.  The defendants acted willfully and knowingly.

### The Attack at the U.S. Capitol on January 6, 2021

1.       The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2.       On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public.  The U.S. Capitol Police had established security barriers, including bike racks that were positioned to the north of the U.S. Capitol along Constitution Avenue; to the south of the U.S. Capitol along Independence Avenue; to the west of the U.S. Capitol along First Street on the eastern side of that street; and, on the east side of the U.S. Capitol, between the Capitol Plaza and the grassy areas located between the Plaza and First Street, constituting a "Restricted Area." Within the West Front of the Restricted Area there were additional temporary barriers due to preparations and ongoing construction for the Inauguration which was scheduled for January 20, 2021, including green snow fencing and signs stating, "Area Closed By order of the United States Capitol Police Board."

3.       On January 6, 2021, the Restricted Area described above was a posted, cordoned off, or otherwise restricted area where the Vice President and members of his immediate family, official United States Secret Service "protectees," were and would be temporarily visiting.  Because of the protectees' visit to the U.S. Capitol on January 6, 2021, and the Vice President's role in the certification of the Electoral College vote, various members of the Secret Service tasked with providing a security detail for the Vice President and his family worked with the U.S. Capitol Police and with the Senate and House Sergeant at Arms.  Leading up to and on that day, individuals from these agencies shared information surrounding the parameters of the

Restricted Area, the protectees' itinerary for the day, and the manner in which the protectees would be safeguarded as they traveled to, from, and throughout the U.S. Capitol Building and its grounds.

4.      On January 6, 2021, the joint session of the United States Congress convened at the Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday, November 3, 2020. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

5.      As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside.

6.      At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. USCP officers were forced to retreat as the crowd advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

7.      At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows

and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.9 million dollars for repairs.

8.      Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 p.m. on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

9.      The riot at the Capitol was a civil disorder, and it interfered with the Capitol Police's protection of the Capitol and U.S. Secret Service's protection of the vice president, both of which are federally protected functions.  It also obstructed, delayed, or adversely affected commerce in the District of Columbia on January 6.

### *The Defendants' Participation in the January 6, 2021, Capitol Riot*

<u>Planning and Coordination for January 6, 2021</u>

10.     Between December 6, 2020, and January 5, 2021, the defendants, JOSEPH PASTUCCI and JEANETTE MANGIA, who were then in a romantic relationship, made plans to travel to Washington, D.C., on January 6, 2021.   The defendants knew that Congress was scheduled to certify the electoral college vote that day, and they thought the presidential election had been "stolen" from then-President Trump.

11.     On or about December 6, 2020, PASTUCCI sent MANGIA numerous links to various types of chemical irritants, including pepper spray, red pepper gel, and bear spray.

12.     On or about December 15, 2020, PASTUCCI sent MANGIA a text message that had been forwarded to him. This text message purported to outline processes that could be used in Congress on January 6, 2021, stating in sum and substance:

> Today, the electoral college votes will be sealed and sent by special carrier to Washington where they remain sealed until January 6th when the House and Senate will come into a joint session to open the votes. The media going to make you believe that it's all over and Joe Biden will official president (*sic*)…
>
> On January 6th, Nancy Pelosi will sit down with the rest of the House members as she has no special power or authority over the hearing… Vice President Mike Pence will have all the authority as president of the Senate for that day and will accept or reject motions to decide the next steps by the assembly.
>
> Remember…Mike Pence is in full authority that day as written in the Constitution. The ballots will be certified today but that means nothing…
>
> The votes will be opened and at that point one House member could, and most likely will, raise their hand to object to the Vice President on the state of elector's votes. That objection could cover fraud or any other reason, and with the second of that objection everything changes.
>
> Everything!!

The House and Senate will divide for two hours (at least) to debate, then vote. The vote be per Senator with the Vice President being the deciding vote if needed in the Senate, while the vote in the House will only be ONE vote per delegation, per state, not per House member!!! The Republicans have 30 delegation votes. If this scenario runs true, President Trump gets re-elected.

The Democrats, the media, social networks and globalists around the world will come unhinged and chaos will erupt. Bigly President Trump is trying to do the right thing and go through the courts first, expose all the fraud, but we all know that none of the courts, even the Supreme Court wanted to touch this issues with a 10-ft pole! This is why our forefathers were so brilliant because they knew something like this could happen someday. So, don't list to the media and all their deception and lies. All you have to do is read the Constitution and you know that the law, policies and procedures are on our side.

Tic Toc… Tic Toc…

11.     On or about December 16, 2020, MANGIA filled out by hand a "complaint form" from "Civil Authority of the We the People Office of Police Complaints" in which she outlined a series of alleged "complaints" against Representative Nancy Pelosi, who was then the Speaker of the House of Representatives. Among these complaints were alleged offenses committed by then-Speaker Pelosi against then-President Trump. *See* Gov. Ex.'s 1.1, 1.2, and 1.3.

12.     On or about December 20, 2020, MANGIA sent PASTUCCI an Amazon.com link to a Red Dragon brand "Weed Dragon Backpack Propane Vapor Torch Kit," which was the Amazon recommended result for her search of "flamethrower." *See* Gov. Ex. 2. PASTUCCI responded to MANGIA, "That's cool but u wouldn't get away with carrying it[.]" MANGIA responded to PASTUCCI, "Don't worry about me…"

13.    On or about January 2, 2021, MANGIA sent PASTUCCI three possible slogans for

signage to be used in Washington, D.C. These possible slogans included:

FUCK
All You Corrupt
Bastards



STOP
THE
STEAL
MORONS


FUCK 👆
BLM
&
Antifa

13.    On or about January 5, 2021, MANGIA and PASTUCCI engaged in the following

conversation via text message:

> Mangia: They are trying to close the airports 🙁
> Pastucci: That could be a prob for some patriots to get to DC
> Mangia: Oh (*sic*) course
> Pastucci: Hopefully, they don't close
> Mangia: Heading home
> Pastucci: OK see u soon
> Mangia: Everybody is bringing their gun sounds like it 😮
> Pastucci: Is that definite or not sure
> Mangia: The group that is going with Rattlesnake are bringing their guns.
> They are hiding them in there (*sic*) vehicles for the ride to Virginia

<u>Activities in Washington, D.C., on January 6, 2021</u>

14.    On January 6, 2021, MANGIA and PASTUCCI travelled from their home in New

Cumberland, Pennsylvania, to the Washington, D.C., area to attend the "Stop the Steal" rally.

15.    For all the events described herein, unless otherwise noted, MANGIA and

PASTUCCI were in the immediate presence of each other and were acting together.

16.     PASTUCCI was dressed in a distinctive Yamaha-branded blue jacket and camouflage "Veterans for Trump" hat, and carrying an American flag with text printed on it. MANGIA was dressed in a black winter coat, black Trump-branded hat with distinctive gold stitching on the brim and carrying a red and white bullhorn. *See* Gov. Ex. 3.

17.     After arriving in the Washington area, PASTUCCI and MANGIA took the Metro to downtown Washington. Once they arrived in Washington, PASTUCCI and MANGIA attended the "Stop the Steal" rally for President Trump on the morning of January 6.

18.     After the rally, PASTUCCI and MANGIA walked down toward the United States Capitol. They both knew that Vice President Pence would be there for the certification proceeding taking place at the Capitol that day.  MANGIA was immediately next to PASTUCCI while they were walking towards the Capitol. PASTUCCI was holding a sign that read "FUCK BLM & ANTIFA STOP THE STEAL NOW! YOU TYRANT BASTARDS!!!" The sign also included a middle-finger emoji and a yellow section that read "WARNING: DON'T BE AN ASSHOLE." *See* Gov. Ex. 4.

19.     PASTUCCI and MANGIA approached the Capitol and climbed up the West Front before the Senate Wing Door was breached at 2:13 p.m. At 2:15 p.m., PASTUCCI and MANGIA entered the Capitol through the Senate Wing Door.  *See* Gov. Ex. 5.1 at 00:55-END; *see also* Gov. Ex. 5.2 at 00:00-00:08. When PASTUCCI and MANGIA entered the Capitol via the Senate Wing Door, they did so because they wanted to obstruct the certification of the Electoral College vote.

20.     Inside the Capitol at 2:28 p.m., PASTUCCI and MANGIA confronted officers from the United States Capitol Police. These officers prevented them from moving further down a hallway. MANGIA yelled at these officers through a bullhorn that was positioned inches from their faces. PASTUCCI also yelled at these same officers. Having had their way blocked by the

officers, the defendants turned around and came back from the way they came. *See* Gov. Ex. 6 at 08:29-11:23.

21.     PASTUCCI and MANGIA passed through the Small House Rotunda and hallways in the House office complex on the ground floor of the Capitol.

22.     At 2:36 p.m., PASTUCCI and MANGIA entered the Speaker of the House's Office Suite. Shortly thereafter, PASTUCCI and MANGIA entered the Speaker's personal office. MANGIA took a seat in a chair near the fireplace and mantle and posed after instructing PASTUCCI to take a picture of her. *See* Gov Ex. 7 at 06:58-END.

23.     After exiting the Speaker's office suite at approximately 2:37 p.m., PASTUCCI and MANGIA moved towards the Capitol Rotunda, entering it one minute later. Inside the Rotunda, MANGIA took photographs of the statutes and painting inside of the Rotunda.

24.     PASTUCCI and MANGIA exited the Rotunda and climbed the East Stairs to the second floor of the Capitol. On the second floor, the defendants walked to the entrance to the Senate Gallery but turned around before crossing the threshold into the Gallery. The defendants then turned around and went back to the first floor of the Capitol.

25.     Back on the first floor, PASTUCCI and MANGIA walked around for several minutes before climbing the Senate Stairs and finding themselves at a locked door which led to the Senate Chamber and through which the Vice President had been evacuated approximately half an hour before. MANGIA knocked on the glass door before turning around and going back down the stairs with PASTUCCI. *See* Gov. Ex. 8.

26.     At 2:48 p.m., PASTUCCI and MANGIA entered the Senate Chamber and each took a seat in two seats in the back of the chamber. *See* Gov. Ex. 9.1 at 15:35-28:23; *see also* Gov. Ex. 9.3 at 16:50-19:29. While they were in the Senate Chamber, PASTUCCI and MANGIA

walked on, inspected, and photographed the Senate Dais. *See* Gov. Ex. 9.1 at 15:35-28:23; *see also* Gov. Ex. 9.3 at 16:50-19:29. MANGIA personally handled and reviewed documents taken from the desks of United States Senators. *Id.*; *see also* Gov. Ex. 9.2 at 00:00-00:15.  PASTUCCI, who was standing immediately next to MANGIA while she was handling the documents, leaned over her shoulder to more closely inspect the document. *See* Gov. Ex. 9.2 at 00:00-00:15. They remained in the Senate Chamber for approximately fourteen minutes. *See* Gov. Ex. 9.1 at 15:35-28:23; *see also* Gov. Ex. 9.3 at 16:50-19:29.

27.     After leaving the Senate Chamber, between 3:04 p.m. and approximately 3:06 p.m., PASTUCCI and MANGIA had a confrontation with police officers near the Senate Carriage Door. *See* Gov. Ex. 10 at 03:45-05:56; *see also* Gov. Ex. 11 at 03:46-06:04. During this confrontation, the officers instructed PASTUCCI and MANGIA to leave the building, but they refused to do so. PASTUCCI was then physically pushed from the Capitol by a police officer. *See* Gov. Ex. 10 at 04:37-04:57. PASTUCCI resisted this officer's efforts to push him from the building, including by grabbing a piece of furniture and using it to try and brace against the officer's efforts. *Id.* MANGIA continued to refuse to comply with the officers' orders, fell to the ground, kicked and flailed at officers, and had to be physically lifted and carried out of the building through the Senate Carriage Door. *See id.* at 05:05-05:56. Outside the Senate Carriage Door, MANGIA kicked one of the United States Capitol Police officers who carried her out in the groin area and PASTUCCI shoved this same officer in the chest and shoulder area. *See* Gov. Ex. 11 at 05:50-06:04.

28.     After being removed from the Capitol and assaulting a police officer at approximately 3:06 p.m., PASTUCCI and MANGIA reentered the Capitol through the Rotunda Doors at 3:21 p.m. *See* Gov. Ex. 12 at 00:46-02:50; *see also* Gov. Ex. 13 at 00:00-02:57. Back inside the Capitol, MANGIA and PASTUCCI pushed their way to the front of the crowd that was

trying to get inside of the Rotunda. *Id.* MANGIA and PASTUCCI were two of the last rioters to enter the Rotunda before police officers secured to the door against the crowd. *See* Gov. 13 at 2:20-2:57. MANGIA and PASTUCCI remained in the Rotunda for approximately three minutes. After feeling the effects of chemical agents in the air, PASTUCCI informed officers that he and MANGIA wanted to leave the Rotunda. While leaving the Rotunda, Mangia waved at police officers. *See* Gov. Ex. 14. At 07:21-07:42. MANGIA and PASTUCCI then exited the Capitol via the Memorial Door at approximately 3:27 p.m. *See* Gov. 15 at 05:50-06:16.

29.     The defendants knew at the time that they entered the Capitol that they did not have permission to enter the building. The defendants obstructed, influenced, and impeded an official proceeding, that is, a proceeding before Congress, specifically, Congress' certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution and the Electoral Count Act (3 U.S.C. §§ 15-18).

## Conclusion

Without waiving any arguments set forth in the defendant's Motion to Dismiss Count 1, ECF 35, the parties agree that if the Court finds the existence of these facts beyond a reasonable doubt, this evidence would establish each and every element of all the counts of the Indictment against Joseph Pastucci.

Respectfully submitted,

Stephanie L. Cesare
Attorney for Joseph Pastucci

Sean P. McCauley
Assistant United States Attorney

## JOSEPH PASTUCCI'S ACKNOWLEDGMENT

I, JOSEPH PASTUCCI, have read this Statement of Facts for Stipulated Trial and have discussed it with my attorney. I fully understand the elements and the facts that are set forth. I agree and acknowledge by my signature that this Statement of Facts for Stipulated Trial is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of Facts for Stipulated Trial fully.

Date: 4-9-2024

JOSEPH PASTUCCI
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of Facts for Stipulated Trial and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of Facts for Stipulated Trial as true and accurate.

Date: 4-9-24

STEPHANIE L. CESARE
Attorney for Defendant Pastucci