Stephanie L. Cesare, Esquire
PA Attorney I.D. No.: 308102
2 West High Street
Carlisle, Pennsylvania 17013
(717) 249-0900

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | NO. 1:23-CR-288 |
| | : | |
| v. | : | |
| | : | (Judge Howell) |
| JOSEPH PASTUCCI | : | |
| Defendant | : | |

## DEFENDANT JOSEPH PASTUCCI'S
## PRE-SENTENCING MEMORANDUM

**AND NOW**, comes the Defendant, Joseph Pastucci, by and through his counsel, and submits the following Pre-Sentencing Memorandum, respectfully requesting the Honorable Court impose a sentence of 18 months imprisonment.

**I.    Statement of the Case**

Between December 6, 2020, and January 5, 2021, Mr. Pastucci and his co-defendant, Jeanette Mangia, who was his girlfriend at the time, planned to travel to Washington D.C. and attend the "Stop the Steal" rally hosted by then-President Trump on January 6, 2021. During this time numerous text messages were exchanged between the two, including messages sent by Mr. Pastucci to his co-defendant containing links to chemical irritants, such as pepper spray, red pepper gel, and bear spray. Additionally, on

December 15, 2020, Mr. Pastucci sent his co-defendant a message that had previously been forwarded to him, essentially outlining the process that may be used by Congress on January 6, 2021, to certify the Electoral College votes.

On January 6, 2021, Joseph Pastucci with Jeanette Mangia traveled from his home in New Cumberland, Pennsylvania to Washington, D.C. to attend the "Stop the Steal" rally hosted by then-President Trump. After attending the rally, Mr. Pastucci and Ms. Mangia traveled by foot to the Capitol Building.

At 2:15 p.m., Mr. Pastucci entered the Capitol Building through the Senate Wing Door. At all times inside the Capitol Building, Mr. Pastucci and Ms. Mangia remained together. Mr. Pastucci followed the hallway leading from the Senate Wing Door, and at 2:38 p.m., was confronted by United States Capitol Police ("USCP") officers blocking his way down the hall. Mr. Pastucci then turned around and proceeded back down the hallway from where he came.

At 2:36 p.m., Mr. Pastucci entered the Speaker of the House's Office Suite and subsequently entered the Speaker's personal office. While in the office, Mr. Pastucci took a photo of his co-defendant, Ms. Mangia, after being instructed by her to do so.

Mr. Pastucci exited the Speaker's office at 2:37 p.m. and entered the Capitol Rotunda shortly thereafter. Mr. Pastucci remained in the Capitol Rotunda while his co-defendant took photographs. Mr. Pastucci briefly entered the second floor of the Capitol Building, climbing the East stairs, but quickly descended back to the first floor.

2

At 2:48 p.m., Mr. Pastucci entered the Senate Chamber where he and his co-defendant took seats in the back of the chamber. While in the Senate Chamber, co-defendant, Ms. Mangia, personally handled and reviewed documents, while Mr. Pastucci only briefly viewed the documents over Ms. Mangia's shoulder.

Around 3:04 p.m., Mr. Pastucci and his co-defendant were confronted by USCP officers, who instructed the defendants to leave the building. However, they refused to comply. Mr. Pastucci was then pushed by an officer in an attempt to remove him from the Capitol Building. As Ms. Mangia was being physically removed and carried out of the Capitol Building by another officer, Mr. Pastucci shoved the officer as the officer was carrying Ms. Mangia. Mr. Pastucci and Ms. Mangia were removed from the Capitol Building at 3:06 p.m.

Thereafter, Mr. Pastucci reentered the Capitol Building with his co-defendant at 3:21 p.m. through the Rotunda Doors, through which they entered the Rotunda. Once in the Rotunda, Mr. Pastucci informed an officer that he and Ms. Mangia would like to leave after feeling the effects of the chemical agents in the air of the Rotunda.

Mr. Pastucci exited the Capitol Building through the Memorial Door at 3:27 p.m.

On April 4, 2023, a Criminal Complaint was filed and on August 21, 2023, an eleven (11) count indictment was returned by a grand jury charging Mr. Pastucci with Count 1 Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1512(c)(2); Count 2 Civil Disorder, in violation of 18 U.S.C. § 231(a)(3; Count 3 Assaulting,

Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)(1); Count 4 Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1); Count 5 Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2); Count 6 Engaging in Physical Violence in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(4); Counts 7-11 are Class B misdemeanors; Count 7 Entering and Remaining on the Floor of Congress, in violation of 40 U.S.C. § 5104(e)(2)(A), Count 8 Entering and Remaining in Certain Rooms in the Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(C), Count 9 Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D), and Count 10 Act of Physical Violence in the Capitol Grounds or Building, in violation of 40 U.S.C. § 5104 (e)(2)(F).

On April 26, 2024, Mr. Pastucci proceeded to a bench trial and was convicted by this Court of all offenses in the indictment. Due to the pendency of *Fischer v. United States* before the United States Supreme Court, Mr. Pastucci reserved arguments around § 1512(c) and its application to the January 6 prosecutions. On June 28, 2024, the United States Supreme Court issued its opinion in *Fischer,* 144 S.Ct. 2176 (2024), which changed the applicability of Count 2 of the Indictment to Mr. Pastucci's offense conduct on January 6, 2021. Mr. Pastucci then expressed an interest in resolving this matter to the United States with whom he entered a plea agreement on September 24, 2024. Per this agreement, Mr. Pastucci plead guilty to Count 3 of the Indictment,

4

Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)(1) is a felony, punishable by up to eight (8) years imprisonment, a fine of up to $250,000, a period of supervised release of not more than three (3) years, and a special assessment of $100. Sentencing in this case is scheduled for December 20, 2024.

## II.   Legal Precepts

Per the plea agreement, the parties agree that the following Sentencing Guideline sections apply:

A. Count 3

| | |
|---|---|
| Base Offense Level: USSG §2A2.2 | 14 |
| Specific Offense Characteristics: None | 0 |
| Victim Related Adjustment: USSG §3A1.2(a)(1)(A) and (b) | +6 |
| Adjustment for Role in Offense: None | 0 |
| Adjustment for Obstruction of Justice: None | 0 |
| Total Offense Level: | 20 |

The parties further agree that pursuant to USSG §3E1.1(a), a 2-level decrease for acceptance of responsibility is appropriate. Additionally, if this Court determines that Mr. Pastucci's offense level is 16 or greater prior to the applicable 2-level reduction, then Mr. Pastucci should receive an additional 1-point reduction, pursuant to USSG §3E1.1(b). Therefore, Mr. Pastucci's combined offense level is 17.

## III.   Outstanding Objections

Mr. Pastucci first acknowledges that per the plea agreement of the parties, his

estimated guidelines range is 24 months to 30 months and neither a downward nor an upward departure are warranted. Pastucci asks this Court to consider his objection insofar as he asks this Court to consider his role in the offense when varying downward.

### a.) Mr. Pastucci Should Receive a Downward Variance Because He Was a Minor Participant in the Offense Conduct.

Mr. Pastucci was a minor participant in the offense compared to his co-defendant Jeanette Mangia and should be given a sentence at the bottom of the guidelines pursuant to USSG §§3B1.2(b). This sentence is appropriate in this case as Mr. Pastucci's conduct was substantially less culpable than Ms. Mangia in the conduct of the offense.

"The application of section 3B1.2 is inherently fact-bound and largely committed to the discretion of the trial judge." *United States v. Caballero*, 936 F.2d 1292, 1299 (D.C.Cir.1991). Section 3B1.2 is therefore a fact-intensive inquiry, focused on the offense conduct. Amendment 790 clarified the interpretation of §3B1.2(b):

> [W]hen determining mitigating role, the defendant is to be compared with the other participants "in the criminal activity." Focusing the court's attention on the individual defendant and the other participants is more consistent with the other provisions of Chapter Three, Part B. See, e.g., §3B1.2 (the adjustment is based on "the defendant's role in the offense"); §3B1.2, comment. (n.3(C)) (a determination about mitigating role "is heavily dependent upon the facts of the particular case"); Ch. 3, Pt. B, intro. comment. (the determination about mitigating role "is to be made on the basis of all conduct within the scope of §1B1.3 (Relevant Conduct)").

6

USSG Amendment 790, effective November 1, 2015.

The commentary to § 3B1.2 now includes the following non-exhaustive list of factors relevant to a defendant's eligibility for a mitigating role adjustment:

> (1) the degree that a defendant understood the scope and structure of the criminal activity;
> (2) the degree that a defendant participated in the planning or organizing of the criminal activity;
> (3) the degree that a defendant exercised or influenced decision-making authority;
> (4) the nature and extent of a defendant's participation in the commission of criminal activity, including acts performed and responsibility and discretion for the same; and
> (5) the degree that a defendant stood to benefit from the criminal activity.

*See United States v. Amaya-Ortiz*, 296 F.Supp.3d 21, 24n.1 (D.D.C. 2017) (quoting U.S.S.G. § 3B1.2 commentary).

Prior to the offense, Mr. Pastucci did not have a large role in planning or organizing the January 6th Capitol Riot but instead was one of the many who travelled to the Capitol on that day at the direction of others. He did not exercise any decision-making authority beyond his own conduct. During the commission of the offense, Pastucci resisted the officer's efforts to push him from the building, including by grabbing a piece of furniture and using it to try and brace against the officer's efforts. Meanwhile, Mangia continued to refuse to comply with the officers' orders, fell to the ground, kicked and flailed at officers, and had to be physically lifted and carried out of the building. Based on the facts averred, Pastucci was "substantially less culpable"

7

than Mangia based on his actions during the offense. USSG §3B1.2(b). For this reason, Mr. Pastucci asks that this Court grant him a sentence of 24 months based on his minor participation in the offense conduct.

## IV. Section 3553(a) Factors

### a) This Court Should Consider Avoiding Unwarranted Sentencing Disparity When Calculating its Sentence in this Case

As a result of its presentence investigation, the Probation Office identified that the need to avoid unwarranted sentence disparity among similarly situated defendants is a factor that may warrant a variance from the applicable guideline range. PSR ¶ 141. "The U.S. Sentencing Commission makes available online the Judiciary Sentencing Information ("JSIN") platform that provides cumulative data based on five years of sentencing data for offenders sentenced under the same primary guideline, and with the same Final Offense Level and Criminal History Category selected." *United States v. White*, CR 93-97 (BAH), 2022 WL 3646614, at *22 (D.D.C. Aug. 24, 2022). Judiciary Sentencing Information provided indicates that:

> During the last five fiscal years (FY2019-2023), there were 85 defendants whose primary guideline was §2A2.2, with a Final Offense Level of 17 and a Criminal History Category of I, after excluding defendants who received a §5K1.1 substantial assistance departure. For the 77 defendants (91%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 19 month(s) and the median length of imprisonment imposed was 21 month(s). For all 85 defendants in the cell, the average sentence imposed was 18 month(s) and the median sentence imposed was 20 month(s).

PSR ¶ 142. Therefore, considering the need to avoid unwarranted disparity in

8

sentencing, Mr. Pastucci asks that this Court consider granting a downward variance when determining his sentence.

### b) The History and Characteristics of the Defendant

Joseph Pastucci was born on March 4, 1974, in York, Pennsylvania to Michael Younker and Roberta Minthorne. PSR ¶ 95. His parents divorced when he was only two (2) years old, and was primarily raised by his mother, although he spent time back and forth between both parents' residences. PSR ¶ 96. Joseph's father passed away in 2012 due to Chronic Obstructive Pulmonary Disease and Emphysema but was a former President of a Fire Department in York, Pennsylvania. PSR ¶ 95. Joseph's mother currently resides in Gettysburg, Pennsylvania and owns a car dealership, Rams Auto Sales. PSR ¶ 95.

Joseph married Jessica Kirk in 2002 in Gettysburg, Pennsylvania and divorced in 2012. PSR ¶ 98. The couple had two daughters, who are 26 and 21 years old. PSR ¶ 99. Joseph has an additional two daughters, 29 and 28 from a former relationship. PSR ¶ 99. Joseph maintains a relationship with all four of his daughters and talks to them regularly. He also has 7 grandchildren.

Joseph has maintained residency in Pennsylvania for his entire life. PSR ¶ 100. Joseph currently resides at 113 Diller Road in New Cumberland, Pennsylvania. PSR ¶ 100. He has owned the residence since 2019. PSR ¶ 121.

Joseph currently owns Joe's Appliances, a used appliance business, as of 2023.

9

PSR ¶ 113. Through the business, Joseph purchases used appliances online, repairs them, and then re-sells the appliances to customers. PSR ¶ 113. Joseph utilizes Facebook Marketplace, Craigslist and Offer Up to advertise the used appliances for sale. PSR ¶ 113.

Prior to owning Joe's Appliances, Joseph owned a graphic design printing business, Artwork Doctor, from 2007 to 2022, at which time he closed the business due to the pandemic. PSR ¶ 114. Joseph also has specialized skills working with computers and in construction. PSR ¶ 110.

Several friends and family members of Mr. Pastucci have penned letters on his behalf. Taken together, his longtime associates describe Joseph as an incredibly generous and kind-hearted person who is consistently dedicated to helping anyone when needed, especially his friends and family. Joseph's stepfather, Guy Minthorne, who has known Joseph since he was a teenager, notes that Joseph is the kind of person to treat everyone with respect and is always willing to go out of his way for others. *See* **Attachment A**, letter from Guy Minthorne.

Joseph's ex-fiancé, Pamela Rickrode, would like the Court to know that Joseph is a man with an unwavering positive attitude who constantly supported her throughout their relationship. Ms. Rickrode, also describes Joseph as "the handy guy who will help anyone even if he doesn't know them well." *See* **Attachment B**, letter from Pamela Rickrode.

A family friend of over 18 years, Trisha Hoffman, describes Joseph as a "very loyal and trustworthy friend," who has become a part of Ms. Hoffman's family. Ms. Hoffman expresses that Joseph is a great person all around and has never given her or her family reasons to think otherwise. *See* **Attachment C**, letter from Trisha Hoffman.

Mr. Pastucci has few past convictions, including burglary, to which he served parole for 17 months, harassment and criminal mischief, and traffic violations. To be noted, none of the forgoing convictions occurred in the last ten years, and Mr. Pastucci has a Criminal History score of 0.

c) **The Nature and Circumstances of the Offense**

By way of Stipulated Bench Trial, Mr. Pastucci does not dispute his involvement and conduct of offense on January 6, 2021. Mr. Pastucci traveled to Washington D.C. on the morning of January 6, 2021, with the intention of attending the "Stop the Steal" rally hosted by then-President Trump. As for his conduct following the rally and inside the Capitol Building, Mr. Pastucci recognizes his poor choices and actions, to which he understands there are consequences. Mr. Pastucci offers his apologies to this Court and those involved in the events of January 6, 2021, and asks this Court for leniency in his sentencing. *See* **Attachment D**, letter from Joseph Pastucci.

## V. Conclusion

**WHEREFORE**, for the reasons set forth above, Joseph Pastucci respectfully requests This Honorable Court impose a sentence of 18 months imprisonment.

Date: December 6, 2024                             Respectfully submitted,

**ABOM & KUTULAKIS, L.L.C.**
_____/s/_____
Stephanie L. Cesare, Esquire
PA Attorney I.D. No. 308102
2 West High Street
Carlisle, PA 17013
(717) 249-0900

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | NO. 1:23-CR-288 |
| | : | |
| v. | : | |
| | : | (Judge Howell) |
| JOSEPH PASTUCCI | : | |
| Defendant | : | |

## CERTIFICATE OF SERVICE

AND NOW comes Stephanie L. Cesare, Esquire, counsel for Joseph Pastucci, and certifies that a true and correct copy of the foregoing Sentencing memorandum has been served upon AUSA Sean McCauley, via E.C.F.

Sean.McCauley@usdoj.gov


Date: December 6, 2024                    **ABOM & KUTULAKIS, L.L.C.**
                                          _____/s/_____
                                          Stephanie L. Cesare, Esquire
                                          PA Attorney I.D. No. 308102
                                          2 West High Street
                                          Carlisle, PA 17013
                                          (717) 249-0900